UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID KEANU SAI,<br><br>   Plaintiff,<br><br>     v.<br><br>HILLARY DIANE RODHAM CLINTON,<br>Secretary of State of the United States *et al.*,<br><br>   Defendants. | Civil Action No. 10–899 (CKK) |

## MEMORANDUM OPINION
(March 9, 2010)

*Pro se* plaintiff David Keanu Sai ("Plaintiff") filed this action against various government officials seeking declaratory and injunctive relief as well as damages stemming from their alleged violation of the Liliuokalani Assignment, a statement issued by Queen Liliuokalani of the Kingdom of Hawaii relinquishing control of the Hawaiian Islands to the United States on January 17, 1893. Plaintiff contends, *inter alia*, that the Liliuokalani Assignment requires the United States to return control of the islands to the Kingdom of Hawaii, that the annexation of the Hawaiian islands by the United States in 1898 is unconstitutional, and that Plaintiff's conviction for theft in March 2000 by a Hawaii court should be expunged because it is in violation of federal and international law. In his First Amended Complaint, Plaintiff names as defendants Secretary of State Hillary Diane Rodham Clinton, Secretary of Defense Robert Michael Gates, Admiral Robert F. Willard, and Linda Lingle, Governor of the State of Hawaii. On September 23, 2010, Plaintiff voluntarily dismissed all claims against Governor Lingle. The remaining

1

defendants (collectively, "Defendants") have filed a [10] Motion to Dismiss, which Plaintiff opposes.  Also pending before the Court are Plaintiff's [21] Motion for Leave to File Supplemental Complaint and motions to intervene filed by Alfred Napahuelua Spinney and James Kimo Keka.  For the reasons explained below, the Court shall grant Defendants' motion to dismiss and deny Plaintiff's motion for leave to supplement his complaint and the motions to intervene.

## I. BACKGROUND

*A.     Hawaii's History as a Territory of the United States*

The Hawaiian islands were united as one kingdom in 1810 under the leadership of King Kamemeha I.  *See Rice v. Cayetano*, 528 U.S. 495, 501 (2000).  Near the end of the nineteenth century, American business interests were dominating the islands and creating tensions with pro-native, anti-Western interests.  *See id.* at 504.  In 1887, Westerners forced the resignation of the Hawaiian Prime Minister and the adoption of a new constitution.  *Id.*  In 1893, "a group of professionals and businessmen, with the active assistance of John Stevens, the United States Minister to Hawaii, acting with United States Armed Forces, replaced the monarchy with a provisional government" that sought annexation by the United States.  *Id.* at 505.  The overthrow of the Hawaiian government was effected on January 17, 1893, when Queen Liliuokalani issued the following statement:

> I, Liliuokalani, by the grace of God and under the constitution of the Hawaiian Kingdom, Queen, do hereby solemnly protest against any and all acts done against myself and the constitutional Government of the Hawaiian Kingdom by certain persons claiming to have established a Provisional Government of and for this Kingdom.
>
> That I yield to the superior force of the United States of America, whose minister

> plenipotentiary, His Excellency John L. Stevens, has caused United States troops to be landed at Honolulu and declared that he would support the Provisional Government.
>
> Now, to avoid any collision of armed forces, and perhaps the loss of life, I do, under this protest, and impelled by said force, yield my authority until such time as the Government of the United States shall, upon facts being presented to it, undo the action of its representatives and reinstate me in the authority which I claim as the constitutional sovereign of the Hawaiian Islands.

*See* Joint Resolution to Acknowledge the 100th Anniversary of the January 17, 1893 Overthrow of the Kingdom of Hawaii, Pub. L. No. 103-150, 107 Stat. 1510, 1511 (1993) (hereinafter, "Apology Resolution"); Compl., Ex. B at 18. Plaintiff refers to this assignment of power as the "Liliuokalani Assignment." *See* Am. Compl. ¶¶ 1, 16-17. In 1993, Congress passed a resolution formally apologizing to Native Hawaiians for the involvement of the United States in overthrowing the Hawaiian Kingdom. *See* Apology Resolution; 20 U.S.C. § 7512(5); *Hawaii v. Off. of Hawaiian Affairs*, 129 S. Ct. 1436, 1440-41 (2009).

On February 1, 1893, the United States minister raised the American flag and proclaimed Hawaii to be a protectorate of the United States. *See* Apology Resolution, 107 Stat. at 1511. A federal investigation concluded that the United States diplomatic and military representatives had abused their authority and were responsible for the change in government. *Id.* On December 18, 1893, President Grover Cleveland delivered a message to the Congress relating to the Hawaiian islands. *See* House Ex. Doc. 47, 53d Cong., 2d Sess. (Ser. No. 3224), pp. 3-16 (1893) (hereinafter, "Cleveland Message"). President Cleveland acknowledged Queen Liliuokalani's surrender of sovereignty, stating that "[s]he surrendered not absolutely and permanently, but temporarily and conditionally until such time as the facts could be considered by the United States." Cleveland Message at 15. President Cleveland denounced the role of American forces

and called for the restoration of the Hawaiian monarchy with conditions including a general amnesty for those involved in establishing the Provisional Government. *See id.*; *Rice v. Cayetano*, 528 U.S. at 505. Plaintiff refers to this as the "agreement of restoration." *See* Am. Compl. ¶ 27. The Provisional Government protested President Cleveland's call for restoration of the monarchy and persuaded the Senate Committee on Foreign Relations to conduct a new investigation that justified and condoned the actions of the United States. *See* Apology Resolution, 107 Stat. at 1511-12. On July 24, 1894, the Provisional Government declared itself to be the Republic of Hawaii, and the Provisional Government forced Queen Liliuokalani to abdicate her throne on January 24, 1895. *Id.* at 1512.

On July 7, 1898, President William McKinley signed a Joint Resolution to annex the Hawaiian Islands as territory of the United States, sometimes referred to as the Newlands Resolution. *See* Joint Resolution to Provide for Annexing the Hawaiian Islands to the United States, No. 55, 30 Stat. 750 (1898); *Rice v. Cayetano*, 528 U.S. at 505. Through the Newlands Resolution, the Republic of Hawaii ceded sovereignty over the Hawaiian Islands to the United States. *See* Apology Resolution, 107 Stat. at 1512. In 1900, Congress established a government for the territory of Hawaii, and in 1959, Hawaii became the 50th State of the United States. *Id.*

  B. *Plaintiff's Factual Allegations and Legal Claims*

Plaintiff David Keanu Sai professes to be a subject of the Kingdom of Hawaii. *See* Am. Compl. ¶ 6. On or about December 10, 1995, Plaintiff and his partner, Donald A. Lewis, formed a partnership named the Perfect Title Company. *Id.* ¶ 34. On December 15, 1995, they formed a second partnership called the Hawaiian Kingdom Trust Company. *Id.* ¶ 37. One of the purposes of the Hawaiian Kingdom Trust Company was to provisionally serve as an acting government of

the Hawaiian Kingdom. *Id.* ¶¶ 38-39. Plaintiff was appointed to serve as acting Regent for the Hawaiian Kingdom. *Id.* ¶ 41. On or about February 3, 1996, the Hawaiian Kingdom Trust Company passed a resolution announcing the quieting of all land titles in the Hawaiian Islands. *Id.* ¶ 47. On or about September 5, 1997, the Honolulu police arrested Plaintiff, Lewis, and the secretary for the Hawaiian Kingdom Trust Company on charges of theft, racketeering, and tax evasion relating to their property dealings. Am. Compl. ¶ 52. Plaintiff and Lewis were ultimately indicted for attempted theft in the first degree. *Id.* Plaintiff was convicted on March 7, 2000. *Id.* ¶¶ 60, 61.

Plaintiff filed his initial complaint in this action on June 1, 2010 and amended his complaint on July 9, 2010. In his First Amended Complaint, Plaintiff asserts three causes of action. In Count One, Plaintiff asserts that pursuant to the Liliuokalani Assignment and various international treaties, Defendants have a legal obligation to administer Hawaiian Kingdom law until the Hawaiian Kingdom government is restored pursuant to the "agreement of restoration" made by President Cleveland in 1893. *See* Am. Compl. ¶ 64. Plaintiff contends that the Joint Resolution annexing the Hawaiian Islands violates the Liliuokalani Assignment and the sovereignty of the Hawaiian Kingdom. *See id.* ¶¶ 65-71. Plaintiff claims that he has suffered injuries and damages as a result of the United States's occupation of the Hawaiian Islands and seeks a declaration that the Newlands Resolution is unconstitutional and void. *Id.* ¶ 72. In Count Two of the First Amended Complaint, Plaintiff claims that his indictment, prosecution, and conviction violated his civil rights under Hawaiian Kingdom law and violated the Liliuokalani Assignment and various international treaties. *See id.* ¶¶ 74-78. Plaintiff therefore asks the Court to set aside and expunge Plaintiff's felony conviction by the State of Hawaii. *Id.* ¶ 78. In

5

Count Three of the First Amended Complaint, Plaintiff claims that his arrest, prosecution, and conviction for theft violated international law and asks the Court to find that his prosecution and conviction constituted a war crime. *Id.* ¶¶ 80-85. In addition, Plaintiff asks the Court to enjoin Defendants from violating the Liliuokalani Assignment and enter a judgment in favor of Plaintiff for compensatory and punitive damages. *See* Am. Compl., Prayer for Relief ¶¶ 3-5. Plaintiff asserts that jurisdiction exists under the Alien Tort Statute, 28 U.S.C. § 1350, which provides that "[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." *See* Am. Compl. ¶ 2; 28 U.S.C. § 1350.

## II. LEGAL STANDARD

Defendants move to dismiss Plaintiff's First Amended Complaint for lack of subject matter jurisdiction. A court must dismiss a case pursuant to Rule 12(b)(1) when it lacks subject matter jurisdiction. In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coalition for Underground Expansion*, 333 F.3d at 198 (citations omitted); *see also Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction."). "At the motion to dismiss stage, counseled complaints, as well as *pro se* complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005). In spite of the favorable inferences that a plaintiff receives on a motion to

dismiss, it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence. *Am. Farm Bureau v. Envtl. Prot. Agency*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), [a] plaintiff['s] factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal citations and quotation marks omitted).

### III.  DISCUSSION

Although Plaintiff purports to assert three separate causes of action in his First Amended Complaint, each of Plaintiff's claims is based on his assertion that the exercise of sovereignty by the United States over the Hawaiian Islands violates federal and international law. As explained below, the Court finds that it lacks jurisdiction over such claims because they present a nonjusticiable political question.

> A. *The Status of Hawaii As Part of the United States Is a Political Question over Which the Court Lacks Jurisdiction*

"The principle that the courts lack jurisdiction over political questions that are by their nature 'committed to the political branches to the exclusion of the judiciary' is as old as the fundamental principle of judicial review." *Schneider v. Kissinger*, 412 F.3d 190, 193 (D.C. Cir. 2005) (quoting *Antolok v. United States*, 873 F.2d 369, 379 (D.C. Cir. 1989) (opinion of Sentelle, J.)). In determining whether a case presents a nonjusticiable political question, the courts look for six factors: (1) a textually demonstrable constitutional commitment of the issue to a coordinate political department; (2) a lack of judicially discoverable and manageable standards

7

for resolving it; (3) the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; (4) the impossibility of a court's undertaking independent resolution without expressing a lack of respect due coordinate branches of government; (5) an unusual need for unquestioning adherence to a political decision already made; or (6) the potentiality of embarrassment of multifarious pronouncements by various departments on one question. *Baker v. Carr*, 369 U.S. 186, 217 (1962). If any one of these factors is present, the Court may find that the question is political. *Schneider*, 412 F.3d at 194.

The federal courts have long recognized that the determination of sovereignty over a territory is fundamentally a political question beyond the jurisdiction of the courts. As the Supreme Court recognized in 1890:

> Who is the sovereign, *de jure* or *de facto*, of a territory, is not a judicial, but a political, question, the determination of which by the legislative and executive departments of any government conclusively binds the judges, as well as all other officers, citizens, and subjects of that government. This principle has always been upheld by this court, and has been affirmed under a great variety of circumstances.

*Jones v. United States*, 137 U.S. 202, 212 (1890). This principle was recently reaffirmed by the D.C. Circuit, which ruled that claims requiring the determination of sovereignty over Taiwan under federal and international law presented a political question requiring dismissal for lack of subject matter jurisdiction. *See Lin v. United States*, 561 F.3d 502, 505-08 (D.C. Cir.), *cert. denied*, 130 S. Ct. 202 (2009).

Analysis of the *Baker v. Carr* factors confirms that Plaintiff's claims present this Court with a nonjusticiable political question. Plaintiff's lawsuit challenges the United States's recognition of the Republic of Hawaii as a sovereign entity and the United States's exercise of authority over Hawaii following annexation. However, "[t]he conduct of the foreign relations of

8

our Government is committed by the Constitution to the Executive and Legislative–'the political'–Departments of the Government, and the propriety of what may be done in the exercise of this political power is not subject to judicial inquiry or decision." *Oetjen v. Cent. Leather Co.*, 246 U.S. 297, 302 (1918). In addition, the Constitution vests Congress with the "Power to dispose of an make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." U.S. Const., Art. IV, § 3, cl. 2. Therefore, there is a textually demonstrable constitutional commitment of these issues to the political branches. Furthermore, it would be impossible for this Court to grant the relief requested by Plaintiff without disturbing a judgment of the legislative and executive branches that has remained untouched by the federal courts for over a century. Since its annexation in 1898 and admission to the Union as a State in 1959, Hawaii has been firmly established as part of the United States. The passage of time and the significance of the issue of sovereignty present an unusual need for unquestioning adherence to a political decision already made.

Plaintiff argues that he is not challenging the legality of the State of Hawaii and his conviction but is merely asserting a claim for a violation of the Liliuokalani Assignment under the Alien Tort Statute, 28 U.S.C. § 1350. However, in order to find that Defendants have violated the Liliuokalani Assignment as alleged by Plaintiff—or even to conclude that Plaintiff is an alien capable of bringing claims under the Alien Tort Statute rather than a U.S. citizen—the Court would have to determine that the annexation of Hawaii by the United States was unlawful and void. As described above, that is a political question that this Court cannot decide. The fact that the answer might be gleaned through a straightforward analysis of federal and international law does not matter; "[t]he political question doctrine deprives federal courts of jurisdiction,

based on prudential concerns, over cases which would normally fall within their purview." *Lin*, 561 F.3d at 506; *see id.* ("We do not disagree with Appellants' assertion that we *could* resolve this case through treaty analysis and statutory construction; we merely decline to do so as this case presents a political question which strips us of jurisdiction to undertake that otherwise familiar task.") (internal citations omitted). Therefore, the Court must dismiss Plaintiff's First Amended Complaint for lack of subject matter jurisdiction.

     B.     *Plaintiff's Proposed Supplemental Complaint Does Not Assert a Justiciable Claim*

Plaintiff has filed a Motion for Leave to File Supplemental Complaint, which is opposed by Defendants. Pursuant to Rule 15(d), "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense." Fed. R. Civ. P. 15(d). "The decision whether to grant leave to amend or supplement a complaint is within the discretion of the district court, but leave 'should be freely given unless there is a good reason, such as futility, to the contrary.'" *Wildearth Guardians v. Kempthorne*, 592 F. Supp. 2d 18, 23 (D.D.C. 2008) (quoting *Willoughby v. Potomac Elec. Power Co.*, 100 F.3d 999, 1003 (D.C. Cir. 1996)). Here, Plaintiff seeks to supplement his complaint by adding President Barack Obama as a defendant along with thirty-five ambassadors to the United States from various countries with consular offices in Hawaii. Plaintiff also seeks to add specific allegations relating to each of these proposed defendants' allegedly unlawful actions in the Hawaiian Kingdom.

The Court finds that Plaintiff's proposed supplemental complaint presents the same

nonjusticiable political question presented in the First Amended Complaint. Therefore, the Court shall deny Plaintiff's motion for leave to file a supplemental complaint as futile. Because Plaintiff has not presented the Court with any justiciable claims, the Court must also dismiss the pending motions for intervention under Rule 24. *See Black v. Cent. Motor Lines, Inc.*, 500 F.2d 407, 408 (4th Cir. 1974) ("Intervention is ancillary and subordinate to a main cause and whenever an action is terminated, for whatever reason, there no longer remains an action in which there can be an intervention. By its very nature intervention presupposes pendency of an action in a court of competent jurisdiction.") (internal citation omitted). Accordingly, the Court shall dismiss this action in its entirety.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that the claims asserted by Plaintiff in this action present a political question over which this Court lacks subject matter jurisdiction. Accordingly, the Court shall GRANT Defendants' [10] Motion to Dismiss; DENY Plaintiff's [21] Motion for Leave to File Supplemental Complaint; DENY Alfred Napahuelua Spinney's [17] Application to Intervene; and DENY James Kimo Keka's [30] Motion to Intervene. An appropriate Order accompanies this Memorandum Opinion.

                                            /s/
                                      COLLEEN KOLLAR-KOTELLY
                                      United States District Judge